# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| ROBERT MABON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:07-CV-360-RL |
| | ) | |
| UNITED STATES STEEL CORPORATION, | ) ) | |
| | ) | |
| Defendant. | ) | |

# REPORT AND RECOMMENDATION OF
# UNITED STATES MAGISTRATE JUDGE PURSUANT TO
# 28 U.S.C. § 636(b)(1)(B)

This matter is before the Court on Defendant's Motion for Summary Judgment [DE 25], filed by Defendant on April 3, 2009.

On August 4, 2009, District Court Judge Rudy Lozano entered an order [DE 35] referring this case to the undersigned Magistrate Judge for a Report and Recommendation on the instant Motion. Based on the following analysis, the Court recommends to the District Court that Defendant's Motion for Summary Judgment [DE 25] be granted.

## PROCEDURAL BACKGROUND

On October 15, 2007, Plaintiff filed a Complaint and Jury Demand in this Court under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") and 42 U.S.C. § 1981, alleging that Defendant discriminated against him on the basis of race by reclassifying him to a lower pay grade than similarly situated white employees and offering white Roll Grinders more overtime than he, despite the fact that he had more seniority. Further, Plaintiff alleged a claim

of Intentional Infliction of Emotional Distress under Indiana law. On December 12, 2007, Defendant filed an Answer.

On February 22, 2008, Plaintiff filed a First Amended Complaint and Jury Demand, to which Defendant filed an Answer on March 6, 2008.

On April 3, 2009, Defendant filed a Motion for Summary Judgment and brief in support. On June 5, 2009, Plaintiff filed a response brief in opposition to Defendant's Motion for Summary Judgment. Defendant filed a reply brief on June 23, 2009.

On August 4, 2009, the District Court referred this case to the undersigned Magistrate Judge for a Report and Recommendation on the Motion for Summary Judgment.

**FACTUAL BACKGROUND**

Plaintiff began his employment with Defendant in 1968 as a laborer in Defendant's Gary, Indiana plant. Plaintiff later worked for Defendant as an operator and a burner. Later, Plaintiff transferred to the 84" Roll Shop and worked as a chucker and a lathe man.

Kenneth York began his employment with Defendant in 1977. Prior to working for Defendant, Mr. York worked for another company as a machinist and took machinist-related classes at Ivy Tech.

Prior to May 2003, bargaining unit jobs at Defendant's plants were described and classified individually by the local union and plant management. Each job was associated with a job class that determined the rate of pay, and the rate of pay increased with each higher job class. The following positions and job classes were available in the Roll Shop: (1) Chucker (job class 8); (2) Craneman (job class 8); (3) Lathe (job class 11); (4) Bearing Repairman (job class 12); (5) Roll Grinder–(a) Floor Grinder (job class 12) and (b) Pulpit Grinder (job class 15); and (6) Maintenance (job classes 18

2

through 25). Plaintiff worked as a floor grinder from approximately 1998 through 2003 and, thereafter, worked as a pulpit grinder. As a pulpit grinder, Plaintiff operated three computerized roll grinding machines.

In 2003, Defendant and the United Steelworkers of America ("USWA")–the labor union of which Plaintiff is a member–entered into a new collective bargaining agreement, effective May 20, 2003 (hereafter, "the 2003 collective bargaining agreement"). The USWA negotiated the 2003 collective bargaining agreement as the exclusive representative of the bargaining unit employees, including the Plaintiff. The 2003 collective bargaining agreement applied to the domestic steel plants owned and operated by Defendant, including its Gary, Indiana plant.

Pursuant to the terms of the 2003 collective bargaining agreement, Defendant and the USWA agreed to significant job restructuring that included six standard job descriptions and associated labor grades that were to apply universally at all plant locations. The job restructuring resulted in the reclassification of the previous job classes down to six positions and five labor grades, including: (1) Utility Person (Labor Grade 1); (2) Utility Technician (Labor Grade 2); (3) Operating Technician I (Labor Grade 3); (4) Operating Technician II (Labor Grade 4); (5) Maintenance Technician (Mechanical or Electrical) (Labor Grade 4); and (6) Senior Operating Technician (Labor Grade 5). Under the new job structure, an employee's rate of pay would be determined by his or her Labor Grade classification.

After the restructuring, a number of different job classes were grouped together which resulted in the following positions: (1) Chucker (Labor Grade 1-Utility Person); (2) Craneman (Labor Grade 2-Utility Technician); (3) Lathe (Labor Grade 2-Utility Technician); (4) Bearing Repairman (Labor Grade 2-Utility Technician); (5) Floor Grinder (Labor Grade 2-Utility Technician); (6) Pulpit Grinder (Labor Grade 2-Utility Technician); and (7) Maintenance (Labor Grade 4-Operating Technician II or

3

Maintenance Technician). As a result of the restructuring, Plaintiff's pulpit grinder position (formerly a job class 15 position) was reclassified as a Labor Grade 2 Utility Technician. At the time that the jobs were reclassified, the four pulpit grinders in the Roll Shop were African American. Prior to the 2003 collective bargaining agreement taking effect, the pulpit grinder positions were filled by white employees.

In approximately 2003, Mr. York transferred from the Slab Processing/Slitting Yard department into the Roll Shop department, as a craneman.

During negotiations for the 2003 collective bargaining agreement, Defendant and the USWA agreed to an early retirement program, known as the Transition Assistance Program, that would result in a reduction in the workforce. Under the Transition Assistance Program, eligible employees were given incentives to retire early. If an eligible employee elected to retire, Defendant could temporarily retain the employee for a transition period to ensure orderly operation of the plants. As a result of the Transition Assistance Program, twenty three out of the thirty seven employees in the Roll Shop decided to retire and vacancies were created for the pulpit grinder positions. Eventually, Plaintiff and three other African American workers filled the vacancies.

Because of the early retirements resulting from the Transition Assistance Program, the Bearing Repair Area section of the Roll Shop was substantially effected and a number of openings resulted. Defendant asked several cranemen with more seniority than Mr. York if they wanted to work in the Bearing Area. When they declined, Mr. York moved over to the Bearing Area and worked as a bearing repairman–a Labor Grade 2 position. According to Plaintiff, unlike Mr. York, he was not asked to transfer to the Bearing Area.

Although Labor Grade 2 Utility Technicians have the same base pay under the 2003 collective bargaining agreement, the amount of incentives paid for different duties vary. Utility Technicians

4

performing roll grinder duties receive higher incentives than Utility Technicians performing bearing repair duties. Accordingly, pulpit grinders earn higher incentives than bearing repairmen.

While Mr. York worked in the Bearing Area, Bud Rosenberg was a senior bearing repairman who supervised the operations and individuals in the Bearing Area. According to Mr. York's January 14, 2009 deposition testimony, Bud approached him after seeing that he had a good understanding of the work he was doing and Bud decided to share his knowledge with Mr. York. Mr. York then "took it upon [himself] to learn everything possibly that [he] could from [Bud] . . . ." Def.'s Mot. Summ. J., Ex. N at 53:7-8. Bud died in the spring of 2004 and on May 1, 2004, Dave Best became the coordinator of the Roll Shop.

According to David Best's January 15, 2009 deposition testimony, he looked outside the company and at managers inside the company to replace Bud. However, given that the job required burning, welding, and machinist-type knowledge, as he became more familiar with Mr. York, he felt that Mr. York was the right person for the job. According to Best, prior to offering Mr. York the position, Best offered other employees in the Roll Shop, including Plaintiff, the position and training for the position. Plaintiff contends that Best neither offered him the training for the position nor the position itself. According to Best, Plaintiff refused the position as did everyone else who was senior to Mr. York and he offered Mr. York the position in September 2004. Because the position required millwright/maintenance duties and supervision over other Labor Grade 4 employees in the Bearing Repair Area, Best believed that this position qualified as a Labor Grade 4 position, and Defendant gave Mr. York Labor Grade 4 pay.

After the job reclassification took place, Plaintiff and the other African American pulpit grinders complained to their USWA grievance person, John Arroyo, and later to Best, their supervisor, to complain about the reclassification. In particular, Plaintiff argued that no other job

5

class 15 was reclassified as a Labor Grade 2, except for the pulpit grinders, and that they should be reclassified as a Labor Grade 3. After no action was taken, on October 15, 2005, Plaintiff and the other African American pulpit grinders filed a civil rights grievance through the union, alleging that Defendant violated the terms of the 2003 collective bargaining agreement by reclassifying them as Labor Grade 2 employees. By 2006, Defendant had not yet raised the pulpit grinders' Labor Grade and Plaintiff and the other African American pulpit grinders filed a grievance with the Civil Rights Committee representative who later referred Plaintiff to the Equal Employment Opportunity Commission ("EEOC"). Plaintiff filed his charge with the EEOC on October 30, 2006, and received a right to sue letter on July 16, 2007.

On March 23, 2007, Labor Grade 4 Maintenance Technician-Mechanical employees brought a grievance alleging that Defendant violated the 2003 collective bargaining agreement by failing to post the vacant position that Mr. York ultimately received. Effective May 13, 2007, Defendant decreased Mr. York's pay back to Labor Grade 2.

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of

6

material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The moving party may discharge its "initial responsibility" by simply "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *See id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists. *See Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e)(2); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) establishes that the opposing party's "response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see*

*also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party.  *See NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994).  A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact.  *See Anderson*, 477 U.S. at 249-50; *Doe*, 42 F.3d at 443.

## ANALYSIS

### A.  Plaintiff's Race Discrimination Claim

Under § 1981, "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to the full and equal benefit of all laws . . . as is enjoyed by white citizens . . . ."  42 U.S.C. § 1981(a).  Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ."  42 U.S.C. § 2000e-2(a)(1).  A plaintiff may meet his burden of proof under Title VII by offering direct evidence of the defendant's discriminatory intent or by proving disparate

treatment through the indirect method.[1]  *Contreras v. Suncast Corp.*, 237 F.3d 756, 759 (7th Cir. 2001).  Under the direct method, the plaintiff must show either through direct or circumstantial evidence that the employer's decision to take the adverse employment action was motivated by an impermissible animus, such as the plaintiff's race.  *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 938-39 (7th Cir. 2003).  Where a plaintiff fails to establish discrimination under the direct method, the plaintiff may still meet his burden by showing discriminatory treatment under the indirect, burden-shifting method.  *Contreras*, 237 F.3d at 759.  Under the burden-shifting method, established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the plaintiff has the initial burden of establishing a prima facie case of race-based discrimination.  *Id.*

In support of its Motion for Summary Judgment, Defendant contends that the arguments raised in Plaintiff's response brief to the Motion for Summary Judgment are untimely raised and, in any event, Plaintiff is unable to prove race discrimination under the direct or indirect methods.  The Court evaluates each in turn.

*1. Timeliness of the arguments raised in Plaintiff's response brief*

In response to Defendant's Motion for Summary Judgment, Plaintiff argues that he was denied the opportunity to transfer to the bearing repairman position, was denied training, and was not offered the Labor Grade 4 position that Mr. York ultimately received.  Defendant argues that these arguments were not raised in Plaintiff's EEOC charge or Plaintiff's original and amended Complaints, and these claims should be dismissed.

"As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in [his] EEOC charge."  *Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994).

---

[1] Because § 1981 and Title VII claims are analyzed in the same manner, the Court will review Plaintiff's race discrimination claims under § 1981 and Title VII together.  *Eiland v. Trinity Hospital*, 150 F.3d 747, 750 (7th Cir. 1998); *See Bratton v. Roadway Package Sys., Inc.*, 77 F.3d 168, 176 (7th Cir. 1996).

The purpose of this requirement is to promote the resolution of the dispute by settlement or conciliation and to ensure that the sued employers receive adequate notice of the charges against them. *Id.* at 500.

"In order to further the goals of Title VII and given the fact that laypersons rather than lawyers usually are the ones initiating these charges, 'a Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint.'" *Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009) (quoting *Cheek*, 31 F.3d at 500). Further, Title VII plaintiffs can litigate claims not explicitly included in the EEOC charge if the allegations fall within the scope of the plaintiff's allegations contained in the EEOC charge. *Cheek v. Peabody Coal Co.*, 97 F.3d 200, 202 (7th Cir. 1996). In determining whether the allegations in the complaint fall within the scope of the EEOC charge, the Court considers whether they are "like or reasonably related to" those contained in the EEOC charge. *Id.* This is a liberal standard that is satisfied if there is a reasonable relationship between the allegations in the charge and those in the complaint, and the claims in the complaint could reasonably be expected to be discovered in the course of the EEOC's investigation. *Teal*, 559 F.3d at 692.

Here, after reviewing the Complaints and the EEOC charge, the Court concludes that both make the same allegations of discrimination. Plaintiff's EEOC charge alleges that Plaintiff's position was reclassified and that he is being paid less and working less overtime than similarly situated white employees. Moreover, Plaintiff's Complaint and First Amended Complaint make similar allegations, with an additional claim for intentional infliction of emotional distress. However, in his response brief to Defendant's Motion for Summary Judgment, Plaintiff argues that he was never asked to work in the Bearing Area and was not offered the Labor Grade 4 position that Mr. York received, or

training for it. Plaintiff fails to explain how these claims are related to the allegations regarding reclassification and overtime raised in the EEOC charge and his Complaints.

Rather, by raising these new arguments in response to the Motion for Summary Judgment, Plaintiff appears to be attempting to amend his Complaint by basing his race discrimination claim on allegations that were not raised in the EEOC charge or his original or First Amended Complaint. It is well settled in this Circuit that "[a] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996). "A plaintiff cannot create a genuine issue of material fact, thereby precluding summary judgment, by raising facts for the first time in response to defendant's motion for summary judgment which were not raised in the complaint." *Bassiouni v. C.I.A.*, No. 02 C 4049, 2004 WL 1125919, at *8 (N.D. Ill. March 31, 2004). Plaintiff previously had the opportunity to amend his Complaint and failed to include the new claims that he raises in his response brief. Accordingly, the Court concludes that Plaintiff's arguments are improperly before this Court and summary judgment should be granted on these claims.

Nonetheless, in the interests of justice, the Court will address the arguments as if they were properly before this Court.[2]

*2. Direct Method of Proof*

Plaintiff argues that he can prove discrimination under the direct method of proof. Under the direct method, a plaintiff can survive summary judgment by showing sufficient direct or circumstantial evidence on which a jury could find that the alleged adverse employment action was

---

[2] Defendant also argues that some of Plaintiff's discrimination claims are time barred and that Plaintiff should have known of the opportunity to transfer to the bearing repairman position in 2003. However, as discussed below, because the Court finds that no genuine issue of material fact exists regarding Plaintiff's race discrimination claims in this case, the Court need not address this issue.

11

taken for a discriminatory reason. *Jones v. City of Springfield, Ill.*, 554 F.3d 669, 671 (7th Cir. 2009). Direct evidence is evidence that proves the particular fact in question without reliance on inference or presumption. *Nichols v. Southern Ill. Univ.-Edwardsville*, 510 F.3d 772, 781 (7th Cir. 2007). Under this method of proof, direct evidence "usually requires an admission from the decisionmaker about his discriminatory animus, which is rare indeed . . . ." *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1114 (7th Cir. 2009). Here, Plaintiff does not present evidence of a direct admission, instead relying on circumstantial evidence.

Circumstantial evidence of discrimination is evidence which allows the trier of fact to infer intentional discrimination by the decisionmaker. *Nichols*, 510 F.3d at 781. Circumstantial evidence must directly show that there was a discriminatory reason behind the employer's action. *Malozienc v. Pacific Rail Servs.*, 606 F. Supp. 2d 837, 860 (N.D. Ill. 2009). A plaintiff can establish an inference of discrimination by relying on circumstantial evidence, including:

> (1) suspicious timing . . . (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination.

*Egonmwan v. Cook County Sheriff's Dept.*, No. 06 C 4764, 2009 WL 1139150, at *5 (N.D. Ill. April 27, 2009) (citing *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007)). The third category "is substantially the same as the evidence required under the indirect method." *Venturelli v. ARC Community Servs., Inc.*, 350 F.3d 592, 601 (7th Cir. 2003).

Plaintiff does not specify which of these three types of circumstantial evidence he proceeds under. Plaintiff argues that: Defendant gave Mr. York, a white employee with less seniority, an opportunity to train in the Bearing Area, which ultimately led him to receive a higher paying job; Best did not ask Plaintiff or other African American employees if they wanted to be transferred to the

12

Bearing Area; Best lied when he testified at his deposition that he did ask them, and this lie evidences pretext as he would have no reason to lie unless he was motivated by race; the only distinction between Plaintiff and Mr. York is race; Mr. York's pay was decreased back to a Labor Grade 2 level after the suit was filed, which is suspicious and evidences that Defendant recognized that it was caught violating Plaintiff's rights; Best did not enter a rate card for Mr. York, showing that Defendant tried to keep Mr. York's pay increase a secret; and various inconsistencies[3] exist between Best's deposition testimony and Arroyo's, from which a jury could conclude that Defendant knowingly offered Mr. York opportunities that it did not offer to Plaintiff and paid Mr. York a higher salary.

Regarding the argument that Defendant's decision to decrease Mr. York's pay back to a Labor Grade 2 level was suspiciously done after the instant suit was filed and is evidence that Defendant recognized that it was caught violating Plaintiff's rights, Defendant has provided evidence that the decision to do so was not prompted by the instant suit, but rather, by an unrelated grievance filed by the Labor Grade 4 Maintenance Technicians regarding the lack of a prior posting for the position. Accordingly, Plaintiff's reliance on this decision as showing suspicious timing is misplaced.

Plaintiff's argument related to inconsistencies, even if Best was incorrect in asserting that Mr. Arroyo helped recommend Mr. York and agreed to his rate increase, does not demonstrate that a discriminatory reason was behind Defendant failing to offer the bearing repairman position, training, and the Labor Grade 4 position to Plaintiff. Further, Plaintiff has failed to provide evidence that no rate card was entered for Mr. York's pay increase or that the alleged failure to do so was motivated by discriminatory reasons.

---

[3] The inconsistencies that Plaintiff identifies are Best's claim that Mr. Arroyo helped recommend Mr. York to be the leader of the bearing crew when Mr. Arroyo denied doing so; Best's representation that Mr. Arroyo agreed to increase Mr. York's pay, when Mr. Arroyo denied doing so; and Best's statement that he asked Plaintiff and other senior employees if they wanted to be trained in the bearing area, when they deny that he did so. The Court notes that Mr. Arroyo testified that he did not have the power to increase Mr. York's pay and he could not agree to do so.

The remainder of Plaintiff's arguments indicate that he is relying on circumstantial evidence to show that he was qualified for the job in question and was passed over in favor of a person outside the protected class (Mr. York) and the employer's reason is a pretext for discrimination. As previously noted, this category of circumstantial evidence is substantially the same as the evidence required under the indirect method, and the Court will proceed under that method.

*3. Indirect Method of Proof*

Under the indirect method of proof, a plaintiff must show that (1) he is the member of a protected class; (2) he was performing his job according to the employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) that similarly situated employees outside the protected class were treated more favorably by the employer. *Atanus v. Perry*, 520 F.3d 662, 672-73 (7th Cir. 2008). If the plaintiff establishes his prima facie case, then the defendant must state a legitimate, non-discriminatory reason for the adverse employment action. *McDonnell Douglas Corp.*, 411 U.S. at 802. If the defendant offers a legitimate, non-discriminatory reason, then the burden shifts back to the plaintiff to come forward with evidence showing that the stated reason is pretextual. *Id.* at 804.

Defendant concedes that, as an African American, Plaintiff is a member of a protected class and was satisfactorily performing his job. Accordingly, the parties dispute whether Plaintiff suffered an adverse employment action and has identified similarly situated employees outside the protected class.

In support of its Motion for Summary Judgment, Defendant argues that Plaintiff cannot identify similarly situated white employees who were treated more favorably than Plaintiff and Plaintiff did not suffer an adverse employment action. By contrast, Plaintiff argues that he can prove race discrimination under the indirect method.

First, Plaintiff argues that he is similarly situated to Mr. York because they both worked in the same department, Plaintiff has experience burning, working on machines and working on the lathe, but he has more seniority than Mr. York. A similarly situated employee is one who is "directly comparable to [the plaintiff] in all material respects." *Bio v. Federal Express Corp.*, 424 F.3d 593, 597 (7th Cir. 2005). The factors that a court evaluates to determine if two employees are similarly situated include whether the employees "(i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications-provided the employer considered these latter factors in making the personnel decision." *Id.*

After reviewing the record, the Court concludes that Plaintiff and Mr. York are not similarly situated. While Plaintiff and Mr. York both worked in the Roll Shop, prior to being transferred to the Bearing Area, Mr. York worked as a craneman while Plaintiff worked as a pulpit grinder. These positions entailed different duties and responsibilities. Further, Plaintiff had approximately nine years of seniority over Mr. York. *See Bio*, 424 F.3d at 597 (finding that a substantial gap in work experience precludes finding that two parties are similarly situated). Additionally, Mr. York had previous work and educational experience as a machinist, which was relevant to the duties of the bearing repairman position that required "machinist-type knowledge." Def.'s Mot. Summ. J., Ex. C at 30:12. While the record supports that Plaintiff operated machines, it does not support that he had any background in performing machinist type work, an educational background in that area, or that he previously repaired the machines that he worked on. Further, the record does not indicate that Plaintiff and Mr. York were subject to the same standards. Accordingly, the Court concludes that Plaintiff has failed to show that Mr. York is similarly situated to him in all material respects.

15

Nonetheless, even if Plaintiff could show that Mr. York is similarly situated, Plaintiff cannot demonstrate that he suffered an adverse employment action. Plaintiff argues that he was not offered the opportunity to train or work in the Bearing Area, and subsequently was not offered the Labor Grade 4 position/salary. Therefore, he lost money.

"Typically, adverse employment actions are economic injuries such as dismissal, suspension, failure to promote, or diminution in pay." *Markel v. Bd. of Regents of Univ. of Wis. Sys.*, 276 F.3d 906, 911 (7th Cir. 2002). Denying a transfer that would not increase pay or benefits is generally not an adverse employment action. *See Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 275 (7th Cir. 2004). Here, a transfer to the Labor Grade 2 bearing repairman position would have constituted a lateral transfer. Significantly, Mr. Arroyo's February 5, 2009 deposition testimony supports that pulpit grinders make more incentive than positions in the Bearing Area and that Plaintiff, overall, would have received a decrease in pay. Accordingly, even though Labor Grade 2 employees have the same base pay, a transfer to the bearing repairman position would have resulted in less incentive and less overall pay. Therefore, Plaintiff fails to demonstrate that the failure to offer him the Labor Grade 2 bearing repairman position, itself, was an adverse employment action.

However, denying a transfer can qualify as an adverse employment action if it significantly reduces the employee's career prospects. *Herrnreiter v. Chicago Housing Auth.*, 315 F.3d 742, 744 (7th Cir. 2002). Plaintiff argues that he was not given the opportunity to train in the Bearing Area and subsequently lost out on the Labor Grade 4 salary, which Mr. York eventually received. But, Plaintiff's arguments that he would have received the training and it would have resulted in the opportunity to obtain the Labor Grade 4 position and salary are based on speculation. Based on the record, the training that Mr. York received while working as a Labor Grade 2 bearing repairman was not part of a formal training program offered to all employees working in the Bearing Area. Rather,

16

according to Mr. York, he "took it upon [himself] to learn everything possibly that [he] could from [Bud] . . . ." Def.'s Mot. Summ. J., Ex. N at 53:7-8.

Further, even though Mr. York received training in the Bearing Area, the record supports that this alone did not guarantee that Mr. York would receive the Labor Grade 4 position and salary, as the vacancy only opened when Bud unexpectedly died and Best initially looked outside of the organization and at other managers in the company to find a replacement. Later, in light of his background, Best decided to offer Mr. York the position. Plaintiff essentially asks this Court to assume that if he would have been transferred to work in the Bearing Area, he would have sought out training as Mr. York did and would have received the Labor Grade 4 position and pay, even though he did not have a similar educational background or work experience as Mr. York. But Plaintiff fails to present objective evidence that undergoing the training would have made him more likely to receive the Labor Grade 4 pay and position in light of his lack of experience as a machinist.[4] Plaintiff's subjective opinion and speculation that receiving the training would have improved his chances of obtaining the Labor Grade 4 position, based on the facts of this case, are insufficient to defeat summary judgment. *See O'Neal v. City of Chicago*, 392 F.3d 909, 912 (7th Cir. 2004) (providing that speculation is insufficient to defeat summary judgment). Accordingly, Plaintiff fails to show that he suffered an adverse employment action.

Next, even if Plaintiff suffered an adverse employment action, he fails to show that Defendant's stated reason for offering the training and Labor Grade 4 position to Mr. York is a pretext for discrimination. Pretext means a lie or phony excuse. *O'Neal v. City of New Albany*, 293 F.3d 998, 1005 (7th Cir. 2002). A plaintiff can establish pretext with evidence that the employer's explanation

---

[4] Mr. Arroyo testified at his February 5, 2009 deposition that even if the position was posted, Plaintiff would not have been eligible for it.

is not credible. *Atanus*, 520 F.3d at 674. The focus of this inquiry is whether the employer's stated reason was honest, not whether it was accurate or wise. *Lochard v. Provena St. Joseph Med. Ctr.*, 367 F. Supp. 2d 1214, 1224 (N.D. Ill. 2005).

Defendant argues that Mr. York was selected for the Labor Grade 4 position because he was more qualified due to job training. Further, at his deposition, Best testified that the more he got to know Mr. York, he felt that Mr. York was the right person for the job, and once everyone else he offered the training and the position to rejected the offer, he decided to give it to Mr. York. Mr. Arroyo recounted at his deposition that Best spoke to him about Mr. York having maintenance skills and a maintenance-type background. Plaintiff argues Best asked neither he nor other African American pulpit grinders if they wanted the position or training for it. Viewing the facts in the light most favorable to Plaintiff as the non-moving party, even if Best lied about asking Plaintiff and the other African American pulpit grinders if they wanted the position or training for it, this does not demonstrate discriminatory animus behind his decision. Further, while Plaintiff relies on his seniority as the primary argument as to why he should have been offered the opportunities, he fails to refute that Mr. York was more qualified[5] and that Mr. York's prior work experience was a factor behind Defendant's decision to offer him the Labor Grade 4 position, as provided by Mr. Arroyo's testimony.

Accordingly, based on the foregoing, Plaintiff fails to create a genuine issue of material fact regarding his prima facie case of race discrimination and the Court recommends that summary judgment be granted as to his Title VII and § 1981 claims.

*4. Alleged discriminatory actions raised in Plaintiff's Complaints*

---

[5] In fact, the 2003 collective bargaining agreement provides that: "[i]n all cases of promotions . . . the following factors shall be considered: (1) ability to perform the work and physical fitness; and (2) Plant Continuous Service (Plant Service). Where factor (1) is relatively equal between Employees, Plant Service shall be the determining factor." Def.'s Mot. Summ. J. Ex. E at Art. 5, § E(1)(c).

In support of his race discrimination claim, Plaintiff alleges in his Complaint and First Amended Complaint that he was treated differently than his white co-workers in that he was reclassified at a lower pay grade than similarly situated white employees who were in job classes 12 through 15 prior to the ratification of the 2003 collective bargaining agreement, and they were reclassified as Labor Grade 3. Yet, aside from mentioning that the pulpit grinders were reclassified as a Labor Grade 2 in his response brief, Plaintiff does not develop this argument and instead focuses on the training and pay increase that Mr. York received. Further, Plaintiff has not provided this Court with evidence of similarly situated white employees who were reclassified in a Labor Grade 3 position under the 2003 collective bargaining agreement.

Plaintiff also alleges in his First Amended Complaint that white Roll Grinders were offered more overtime than him, even though he had more seniority. However, Plaintiff fails to address this issue in his response brief to Defendant's Motion for Summary Judgment. "Such unsupported and undeveloped arguments are waived." *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 862 (7th Cir. 2005).

Accordingly, the Court recommends that summary judgment be granted on Plaintiff's race discrimination claim related to reclassification and overtime.

### B. Plaintiff's Intentional Infliction of Emotional Distress Claim

Plaintiff's Complaint and First Amended Complaint allege a claim for Intentional Infliction of Emotional Distress ("IIED"). In its Motion for Summary Judgment, Defendant argues that summary judgment must be granted on Plaintiff's IIED claim because he cannot satisfy the tort's elements. In his response brief, Plaintiff fails to address the issue of IIED and, therefore, this claim is waived. *See Palmer v. Marion County,* 327 F.3d 588, 597 (7th Cir. 2003) (holding that claims not addressed in a summary judgment opposition brief are deemed abandoned); *Laborers Int'l Union of*

19

*N. Amer. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999) (stating that arguments not presented to the district court in response to summary judgment motions are waived). Accordingly, the Court recommends that summary judgment be granted on Plaintiff's IIED claim.

**CONCLUSION**

For the foregoing reasons, the Court **RECOMMENDS** that the District Court **GRANT** Defendant's Motion for Summary Judgment [DE 25].

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(B). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have ten (10) days after being served with a copy of this Report and Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

So ORDERED this 24th day of August, 2009.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:   All counsel of record